UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

KELVIN GOMEZ,

                          Plaintiff,

        -against-

THE CITY OF NEW YORK, POLICE OFFICER
THOMAS FARLEY, DETECTIVE KIRONDE
EBERHARDT, and JOHN DOES 1-5,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-1274 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

      In this action, Plaintiff Kelvin Gomez alleges that Defendants, the City of New York

(the "City"), Police Officer Thomas Farley and Detective Kironde Eberhardt (the "Officer

Defendants"), and five unknown police officers (the "John Doe Defendants"), violated Plaintiff's

state and federal rights in connection with his arrest and prosecution on state assault charges.

(Compl. (Dkt. 1).)  Before the court is Defendants' Motion for Judgment on the Pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure (the "Motion").  (Defs.' Mot. for J. on the

Pleadings ("Defs. Mot.") (Dkt. 19).)  For the reasons stated below, Defendants' Motion is

GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. The Underlying Assault

      The following account is drawn from Plaintiff's New York State criminal court complaint

(the "NYS Criminal Complaint").[1]  (See NYS Crim. Compl. (Dkt. 16-3).)  Arthur DeSouza (the

---

[1] These facts were not included in Plaintiff's Complaint in this action, but "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss" or a motion for judgment on the pleadings, "including arrest reports, criminal complaints, indictments, and criminal disposition data."  Fairley v. Collins, No. 09-CV-6894 (PGG), 2011 WL 1002422, at *1 (S.D.N.Y. Mar. 15, 2011) (collecting cases); see also In re Arab

1

"Complainant") was assaulted on January 14, 2013, between 7:50 and 7:55pm (the "Assault").

As the Complainant was leaving the Skyview Center mall in Flushing, New York, the assailant

followed him into an elevator, out of the mall, and across the street. The assailant then struck the

Complainant from behind with a sharp object and fled the location. The Complainant suffered a

laceration from his right eye to his right ear.

### B. Plaintiff's Allegations

On May 16, 2013, Plaintiff was arrested by Defendant Farley and other unnamed officers

from the New York City Police Department ("NYPD"). (Compl. ¶¶ 12-13.) Plaintiff was

charged with multiple state counts in connection with the Assault. (Id. ¶ 17.) He maintains his

innocence (id. ¶ 18), and alleges that his arrest arose out of improper practices by the Officer

Defendants. Plaintiff first discusses a photo array conducted by the Officer Defendants. (Id.

¶ 16.) The Complainant allegedly pointed to two photographs, neither of which was of Plaintiff,

and said he "was undecided between those photographs." (Id.) Officer Farley "refused to accept

this and told [the Complainant] to think about it some more. Officer Farley then improperly

pointed out [Plaintiff's photo] and suggested non-verbally . . . that [the Complainant] should go

with [that photo]." (Id.) The Complainant selected the photo of Plaintiff. (Id.)

Plaintiff also alleges that the Officer Defendants "facilitate[d]" Plaintiff's arrest by

falsely claiming that Plaintiff was known to be a gang member who carried a bladed weapon.

(Id. ¶ 15.) The Officer Defendants then "forwarded [these] false allegations to the Queens

County District Attorney" (the "State Prosecutors") "in order to justify the arrests and to

---

Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 151 (2d Cir. 2015), as amended (Dec. 17, 2015) (motions for judgment on the pleadings are assessed under the same standard as motions to dismiss). The court cites to the NYS Criminal Complaint solely for the substance of the criminal allegations, and not as evidence of Plaintiff's guilt. See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)).

persuade the [State Prosecutors] to commence [Plaintiff's] criminal prosecution." (Id. ¶ 23.) For a period of two and a half years, Plaintiff "was caused to appear in criminal court multiple times to defend himself" against these charges. (Id. ¶ 18.) On July 20, 2015, the charges were dismissed. (Id. ¶ 19.)

Plaintiff asserts that the City, "as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers" who violated individual rights, and has also failed to properly supervise NYPD officers, "thereby causing and encouraging police officers[,] including defendants in this case, to engage in unlawful conduct." (Id. ¶¶ 31-34.)

### C.  Procedural History

Plaintiff initiated this action on March 15, 2016, asserting claims against all individual Defendants under 28 U.S.C. § 1983 and New York State law for false arrest,[2] malicious prosecution, and unlawful search, and under Section 1983 alone for denial of the right to a fair trial and failure to intervene; and asserting claims against the City of New York for derivative liability under New York State law and municipal liability under Section 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). (Compl. ¶¶ 43-110.) On November 3, 2016, Defendants moved for judgment on the pleadings under Rule 12(c). (Defs. Mot.) Both parties have attached numerous evidentiary exhibits to their filings on Defendants' Motion, requiring the court to assess the propriety of extrinsic evidence submitted on a 12(c) motion.

---

[2] Plaintiff's claim is styled as "false arrest and false imprisonment." (Compl. at 10.) These two claims are "largely synonymous," and so the court analyzes them together under the heading of "false arrest." Jenkins v. City of New York, 478 F.3d 76, 88 n.10 (2d Cir. 2007); see also id. ("False arrest is simply false imprisonment accomplished by means of an unlawful arrest." (quoting 59 N.Y. Jur. 2d False Imprisonment § 1)).

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When assessing motions under Rule 12(c), courts "employ the same standard applicable to dismissals" under Rule 12(b)(6). In re Arab Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 151 (2d Cir. 2015), as amended (Dec. 17, 2015) (alterations omitted) (quoting Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009)). The court must therefore "accept as true factual allegations made in the complaint, and draw all reasonable inferences in favor of the plaintiffs." Id. (alterations omitted) (quoting Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012)). This leniency, however, is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, "a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged. While 'the plausibility standard is not akin to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Doe v. Columbia Univ., 831 F.3d 46, 54 (2d Cir. 2016) (internal citations and alterations omitted) (quoting Iqbal, 556 U.S. at 678).

### B. Consideration of Extrinsic Evidence

As a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citation omitted). "Rather, where matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Id. at 202-03 (citing Fed. R. Civ. P. 12(d)). "[I]n some cases," however, "a document not expressly incorporated by reference in the complaint is

nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

## III. DISCUSSION

Defendants have moved for judgment on the pleadings as to all claims. (Defs. Mot.; see also Defs.' Mem. in Supp. of Mot. ("Defs. Mem.") (Dkt. 16-10) at 1-2.) Plaintiff's opposition papers withdraw "any possible claims against John Doe defendants" and concede the "non-viability" of his claims of malicious prosecution and unlawful search as against all Defendants. (Pl.'s Opp'n to Defs. Mot. ("Pl. Opp'n") (Dkt. 16-19) at 2, 4.) The court therefore dismisses these claims with prejudice.

Turning to Plaintiff's remaining claims against Defendants Farley and Eberhardt, the court finds that Plaintiff has adequately pleaded claims of false arrest (under Section 1983 and New York law), denial of a fair trial (under Section 1983), and failure to intervene (under Section 1983) as against both Officer Defendants in their individual capacities.[3] Plaintiff's Monell claim against the City of New York, however, must be dismissed. Defendants' Motion does not address Plaintiff's claim that the City is "vicariously liable for the defendant officer[s'] acts" under the New York State Constitution (see Compl. ¶ 93), and so that claim survives the Motion.

---

[3] Plaintiff purports to sue all individual Defendants "in both their individual and official capacities." (Compl. ¶ 10.) Suits against officials in their official capacity, however, are treated as suits against the entity they represent. Hafer v. Melo, 502 U.S. 21, 25 (1991). The official-capacity claims are therefore analyzed under Plaintiff's municipal liability claim against the City of New York.

## A. False Arrest (Section 1983 and State Law)

Plaintiff asserts a claim of false arrest under Section 1983 and New York law on the grounds that his arrest was unsupported by probable cause. (Compl. ¶¶ 44-48.) Defendants assert that probable cause existed (Defs. Mem. at 5-8), and further argue that the Officer Defendants are entitled to qualified immunity (id. at 8-10). The parties have submitted multiple evidentiary exhibits to support their allegations regarding this claim. The court finds, however, that the submitted documents are neither appropriate for consideration on a Rule 12(c) motion, nor adequate to support converting the Motion into a motion for summary judgment. Based solely on the factual allegations in the Complaint, the court finds that Plaintiff's false arrest claim is sufficiently pleaded against both Officer Defendants.

### 1. Legal Standards

#### a. False Arrest

Claims for false arrest under Section 1983 "are analyzed pursuant to the same standards as the applicable state law's false arrest tort." Nzegwu v. Friedman, 605 F. App'x 27, 29 (2d Cir. 2015) (summary order) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). To prevail on a false arrest claim under New York law, "a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Id. (quoting Jocks, 316 F.3d at 134-35).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been

committed by the person to be arrested." Schwartz v. Marcantonatos, 567 F. App'x 20, 22

(2d Cir. 2014) (summary order) (quoting Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995)).

### b. Qualified Immunity

Under federal law, "[a] police officer is entitled to qualified immunity where (1) his

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known, or (2) it was objectively reasonable for him to believe that

his actions were lawful at the time of the challenged act." Schwartz, 567 F. App'x at 22

(alteration omitted) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)).

Similarly, "under New York law, qualified immunity in the context of a claim of false arrest

depends on whether it was objectively reasonable for the police to believe that they had probable

cause to arrest." Jones v. Parmley, 465 F.3d 46, 64 (2d Cir. 2006) (citing Simpkin v. City of

Troy, 638 N.Y.S.2d 231, 232 (N.Y. App. Div. 1996)); see also Jenkins, 478 F.3d at 86-87.

"There is no doubt that the right to be free from arrest without probable cause was clearly

established at the time of [Plaintiff's] arrest." Schwartz, 567 F. App'x at 22-23 (quoting Jenkins,

478 F.3d at 87). Plaintiff's federal and state "false arrest claim[s] therefore turn[ ] on whether

the officers' probable cause determination was objectively reasonable. 'An officer's

determination is objectively reasonable if there was arguable probable cause at the time of the

arrest—that is, if officers of reasonable competence could disagree on whether the probable

cause test was met." Gonzalez, 728 F.3d at 157 (quoting Jenkins, 478 F.3d at 86-87).

### 2. Extrinsic Evidence Submitted by the Parties

Both parties have submitted evidentiary exhibits that appear to be material to the issue of

probable cause. The court declines to consider the evidence at this time, however, because none

of it is "integral to the complaint." Goel, 820 F.3d at 559 (internal quotation marks and citation

omitted). The court also declines to convert Defendants' Motion into a summary judgment

7

motion under Rule 12(d) because the available evidence, standing alone, does not establish a comprehensive record. The court therefore deems it appropriate to defer a summary judgment ruling until the parties complete discovery.

### a. Records from the Photo Array and Lineup

Defendants submitted documentation of the photo array, signed by the Complainant, stating that the Complainant identified Plaintiff as the assailant. (Photo Array Rep. (Dkt. 16-4).) A record of the photo array's outcome, however, does not disprove Plaintiff's allegation that Defendant Farley improperly influenced the Complainant's selection. Therefore, it cannot be said that the Complaint "relies heavily upon [the] terms and effect" of the photo array records. Goel, 820 F.3d at 559 (citation omitted).

Defendants also submitted documentation of a lineup conducted shortly after the photo array in which the Complainant again selected Plaintiff. (Lineup Rep. (Dkt. 16-5).) The Complaint makes no mention of a lineup, however.[4] Moreover, the alleged harm had already tainted the investigation: a Complainant who was improperly induced to select a certain individual at a photo array could reasonably be expected to seek out the same individual in a subsequent lineup. See In re Arab Bank, 808 F.3d at 151 (all reasonable inferences must be drawn in Plaintiff's favor). The court therefore declines to consider these materials at this stage.

### b. Statements from the Complainant

Plaintiff submitted an affidavit and an unsworn video statement from the Complainant, both of which discuss the Assault, the photo array, and related events. (See DeSouza Aff. (Dkt. 16-13); DeSouza Video Statement (Dkt. 16-14).) "Courts ordinarily do not consider factual assertions contained in affidavits submitted in . . . opposition to a motion to dismiss."

---

[4] This omission is curious. Plaintiff was no doubt aware that the lineup occurred, given that he physically participated in it.

Colliton v. Bunt, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016) (citing Faulkner v. Beer, 463 F.3d 130, 134 n.1 (2d Cir. 2006)). "Moreover, a plaintiff generally may not amend its complaint through its opposition to a motion to dismiss." Id. (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)). Not only has Plaintiff not requested to formally amend the Complaint, but he explicitly declined the opportunity to do so at a hearing on August 11, 2016. (See also Defs.' Reply Mem. in Supp. of Mot. ("Defs. Reply") (Dkt. 16-24) at 1 n.1 (asserting that Plaintiff similarly declined an opportunity to amend the Complaint at the initial conference held before Magistrate Judge Lois Bloom on October 4, 2016).) The court therefore declines to consider these materials on a motion for judgment on the pleadings.

### d. Surveillance Footage from the Night of the Assault

Finally, Plaintiff and Defendants have both submitted portions of the surveillance footage (the "Surveillance Footage") from January 14, 2013, the night of the Assault, showing various areas of the Target store in the Skyview Center, which Complainant exited shortly before he was assaulted. (See Ex. D, Pl. Opp'n (Dkt. 16-15); Exs. I to K, Defs. Reply (Dkts. 16-21 to -24); see also supra Section I.A.)

Plaintiff introduced portions of the Surveillance Footage in his opposition papers. Plaintiff describes the videos as showing him inside the Target store with his girlfriend, "walking in a normal and unhurried manner at the same approximate time that he is alleged to have been assaulting the victim and making his escape." (Pl. Opp'n at 14.) Specifically, the videos show Plaintiff entering the store at 7:42pm, walking within the store at 8:11pm, and leaving the store at 8:17pm. (Pl. Opp'n at 7; see also Ex. D, Pl. Opp'n.) Plaintiff argues that the videos were "in the possession of and were reviewed by the defendants prior to plaintiff's arrest," and that they therefore undermine any claim of probable cause, given that the Assault allegedly occurred between 7:50 and 7:55pm. (Pl. Opp'n at 14.)

9

Defendants respond that Plaintiff "disingenuously cherry-picked from the available surveillance footage." (Defs. Reply at 5.) Defendants' Reply attached additional footage that showed Plaintiff "following the [Complainant] out of the Target store . . . at approximately 7:51 p.m. and re-entering the store at 8:01 p.m." (Id.; see also Exs. I to K, Defs. Reply.) "[I]n the surveillance footage, plaintiff can be seen wearing a black-hooded sweatshirt and gray sweatpants—the exact same clothing that the complaining victim stated his assailant was wearing."[5] (Defs. Reply at 6.) Defendants thus argue that the Surveillance Footage actually supports the existence of probable cause. (Id.)

Both parties argue that the Surveillance Footage is material to the question of probable cause, but materiality alone is insufficient; the court is precluded from considering non-public evidence that is not integral to the Complaint, however relevant it may be. The Complaint does not describe the circumstances of the Assault or mention the Surveillance Footage. The court therefore finds it inappropriate to rely on the Surveillance Footage at this stage of the proceedings.

The court notes, in addition, that the probable cause inquiry is "limited to . . . 'the facts known by the arresting officer at the time of the arrest.'" Gonzalez, 728 F.3d at 155 (quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006)). Plaintiff has asserted that Defendants reviewed the Surveillance Footage prior to Plaintiff's arrest, and appears to concede that he is the individual depicted in the excerpted footage. (Pl. Opp'n at 7, 14.) Neither party has alleged, however, that Defendants had so identified Plaintiff prior the arrest. More generally, neither

---

[5] NYPD records from the night of the Assault contain descriptions of the assailant's clothing from the Complainant and a witness. (Crim. Compl. Rep. (Dkt. 16-2).) This evidence, too, is inappropriate for consideration on a motion under 12(c). The record does not appear to be a public document, as it contains a heading in block capitals stating that the "RECORD CONTAINS SEALED INFORMATION" and "MAY NOT BE MADE AVAILABLE TO ANY PERSON . . . OUTSIDE THE POLICE DEPARTMENT." (Id.) Nor is the document integral to the Complaint, given the Complaint's lack of allegations regarding the circumstances of the Assault or the NYPD's investigation prior to the photo array.

party has explained how Plaintiff was initially identified as a suspect or why he was included in the photo array. These gaps in the record caution against conversion of the instant Motion into a motion for summary judgment under Rule 12(d).

### 3. Analysis of Plaintiff's Allegations

Plaintiff asserts that "[a]t no time . . . was it reasonable for the defendants to believe that probable cause existed" for Plaintiff's arrest. (Compl. ¶ 25.) The Complaint contains only two allegations that pertain to probable cause: first, the Officer Defendants conducted a photo array during which Defendant Farley improperly influenced the selection of the Assault victim (id. ¶ 16); and second, the Officer Defendants knowingly falsified claims that Plaintiff was known to be a gang member who carried bladed weapons (id. ¶ 15). Despite certain factual inconsistencies in these allegations,[6] the court finds that Plaintiff has adequately pleaded a lack of probable cause, and that his claim of false arrest survives Defendants' Motion as to both Officer Defendants.

#### a. *Probable Cause*

"[W]hen information supporting an arrest is received from a putative victim . . . , probable cause exists, unless the circumstances raise doubt as to the person's veracity." Schnitter v. City of Rochester, 556 F. App'x 5, 8 (2d Cir. 2014) (summary order) (alterations

---

[6] The court notes two factual issues. First, Defendants assert that the Complaint incorrectly describes the photo array by misstating which numbered photo showed Plaintiff as opposed to other individuals. (Compare Compl. ¶ 6 with Defs. Mem. at 7; Photo Array Rep. (Dkt. 16-4).) The court must draw all reasonable inferences in Plaintiff's favor, however. See In re Arab Bank, 808 F.3d at 151. For the purpose of this motion, the court will accept as true Plaintiff's substantive allegation—that Defendants improperly influenced the victim's selection in the photo array—rather than dwelling on the detail of whether Plaintiff's image was presented as photo #2 or photo #5.

Second, while the Complaint alleges that Defendant Farley was the individual who "suggested non-verbally" that the Complainant should select the photo of Plaintiff, Plaintiff's opposition papers state that it was Defendant Eberhardt who performed this action. (Compare Compl. ¶ 16 with Pl. Opp'n at 5.) Because the court must "accept as true factual allegations made in the complaint," In re Arab Bank, 808 F.3d at 151 (alterations and citations omitted) (emphasis added), the court disregards any inconsistent allegations made in other filings, absent clear notice of an intent to amend the Complaint.

omitted) (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001)). Defendant

Farley's alleged efforts to influence the Complainant's selection during the photo array would

certainly raise doubts as to the Complainant's veracity. Defendant Eberhardt allegedly

"conducted" the photo array together with Defendant Farley (Compl. ¶ 16), and is therefore

reasonably assumed to have been present for the alleged tampering.[7] See In re Arab Bank,

808 F.3d at 151 (all reasonable inferences must be drawn in Plaintiff's favor).

The Complaint does not specify what other information the Officer Defendants may have

had prior to Plaintiff's arrest, except insofar as the Officer Defendants allegedly manufactured

claims regarding Plaintiff's gang association and proclivity for bladed weapons. Probable cause

is assessed "based on the combined import of all the evidence available to the defendant at the

time" of arrest. Nzegwu, 605 F. App'x at 30 (citing Stansbury v. Wertman, 721 F.3d 84, 92-95

(2d Cir. 2013)). On the face of the Complaint, the court finds that Plaintiff has sufficiently

pleaded a lack of probable cause. See Day v. Morgenthau, 909 F.2d 75, 78 (2d Cir. 1990), as

amended on reh'g (Aug. 29, 1990) (Questions as to probable cause "cannot be resolved on the

face of the present complaint . . . because the complaint does not identify what facts were known

to [the defendants] at the time of the arrest.").

Absent a finding of at least arguable probable cause, the Officer Defendants are not

entitled to qualified immunity under federal or state law. Jenkins, 478 F.3d at 86-87. Absent a

finding of actual probable cause, Plaintiff's false arrest claim survives Defendants' Motion as

---

[7] Were it not for the allegation that Defendant Eberhardt was physically present for the photo array, the court would not be permitted to assume Defendant Eberhardt's knowledge of Defendant Farley's alleged malfeasance. The so-called "collective knowledge doctrine" allows knowledge possessed by one police officer to be imputed to others working on the same team, see United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001), but this doctrine "has traditionally been applied to assist officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge," Simone v. United States, 642 F. App'x 73, 75 (2d Cir. 2016) (summary order) (quoting Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003)).

long as Plaintiff has pleaded a prima facie case. Gonzalez, 728 F.3d at 155-57; see also Nzegwu, 605 F. App'x at 29.

### b. *Prima Facie Claim of False Arrest*

Plaintiff alleges that he was arrested by "multiple police officers," including Defendant Farley. (Compl. ¶¶ 12-13.) Given the properly alleged lack of probable cause, the court finds that Plaintiff has pleaded a prima facie claim of false arrest against Defendant Farley. See Nzegwu, 605 F. App'x at 29.

The claim against Defendant Eberhardt is less clear-cut: nowhere does Plaintiff allege that Defendant Eberhardt directly participated in Plaintiff's arrest, or even that Defendant Eberhardt was physically present. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Sorrell v. Cty. of Nassau, 162 F. Supp. 3d 156, 164 (E.D.N.Y. 2016) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), abrogated on other grounds by Iqbal, 556 U.S. 662). The court finds, however, that Defendant Eberhardt's alleged involvement in the investigation and photo array that led to Plaintiff's arrest are sufficient to establish false arrest liability under Section 1983. See Alvarez v. Cty. of Orange, N.Y., 95 F. Supp. 3d 385, 399 n.1 (S.D.N.Y. 2015) (finding that an officer's alleged "participat[ion] in and [oversight of] the investigation that led to the arrest of Plaintiff . . . [rose] to the requisite level of personal involvement necessary to state a claim for false arrest" under Section 1983 (internal quotation marks and citations omitted)); cf. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (noting that Section 1983 liability may attach based on an individual "ordering or helping others to do the unlawful acts").

4. Summary

The extrinsic evidence submitted by the parties is not properly considered on a motion for judgment on the pleadings. The record is sufficiently underdeveloped that the court declines to convert the instant motion into a summary judgment motion under Rule 12(d). Limiting its review to the four corners of the Complaint, the court finds that Plaintiff's false arrest claim survives Defendants' Motion for Judgment on the Pleadings as to both Officer Defendants.

**B. Denial of the Right to a Fair Trial (Section 1983)**

Plaintiff asserts that the Officer Defendants violated his constitutional right to a fair trial "[b]y creating false evidence against [him]; forwarding false evidence and information to the [State Prosecutors]; and by providing false and misleading testimony throughout the criminal proceedings." (Compl. ¶ 84; see also id. ¶¶ 71-85.) The court finds that Plaintiff has properly pleaded a fair trial claim against each of the Officer Defendants.

1. Legal Standard

Claims of denial of the right to a fair trial "based on fabrication of information" arise in cases where "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (describing the standard established in Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)).

A "Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause" for the arrest. Id. at 277-78. Because "fabrication of evidence violate[s] a 'clearly established constitutional right,'" defendant "officers [are] not entitled to qualified immunity." Id. at 276 (alteration omitted) (quoting Ricciuti, 124 F.3d at 130).

14

## 2. Analysis

Plaintiff's allegations as to lack of probable cause—that the Officer Defendants suborned a false identification and falsified claims that Plaintiff was a known gang member who carried bladed weapons (see Compl. ¶¶ 15-16)—apply with equal force to Plaintiff's fair trial claim. Plaintiff alleges that the Officer Defendants "forwarded [this] false evidence and false information" to the State Prosecutors, thereby facilitating Plaintiff's criminal prosecution and causing Plaintiff "to appear in criminal court multiple times to defend himself." (Id. ¶ 18, 73.) The court finds that Plaintiff has adequately alleged fair trial violations against each of the Officer Defendants.

### a. Fabrication of Information by Investigating Officials

Defendants argue that the photo array evidence was not "false." (Defs. Reply at 7.) They once again attempt to rely on the photo array records showing that the Complainant "signed the photo array paperwork, attesting to his identification of plaintiff" as the perpetrator. (Id. (citing Photo Array Rep.).) The court declines to consider this extrinsic evidence for the reasons outlined above in Section III.A.2.a. To the extent that the Officer Defendants misled the State Prosecutors by omitting pertinent information about the unduly suggestive photo array, that evidence may be considered "false." See Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015) ("Information may be 'false' if material omissions render an otherwise true statement false."). Plaintiff has properly alleged the creation of false information with regard to both the photo array and Plaintiff's gang history and weapon use.

### b. Information Likely to Influence a Jury

Defendants argue that the positive identification at the lineup corroborated the Complainant's identification at the photo array, thereby making harmless any defect in the photo array procedure. (Defs. Reply at 7 (citing Lineup Rep.).) As above, the court declines to

consider the extrinsic lineup records, and limits its analysis to the face of the Complaint. In light

of the Complaint's sparse description of the evidence against Plaintiff, and drawing reasonable

inferences in Plaintiff's favor, the court finds that evidence concerning the photo array and

Plaintiff's background would be likely to influence a jury.

### c. *Forwarding Information to Prosecutors*

Defendants protest that the information about gang membership and weapon use "was

merely provided internally" within the NYPD and "was not in any way whatsoever the basis for

plaintiff's arrest and prosecution." (Defs. Reply at 7.) Factual objections are not the province of

a motion under Rule 12(c), however, especially when they appear in a reply brief with no

supporting documentary evidence.[8] At this stage, the court must take as true Plaintiff's

allegation that the Officer Defendants forwarded the information to the State Prosecutors. See In

re Arab Bank, 808 F.3d at 151.

### d. *Deprivation of Liberty*

Defendants argue that any claim based on the "allegedly suggestive identification . . .

must be dismissed because any constitutional violation would not have occurred until the

identification was admitted at trial, which never occurred here because the charges against

---

[8] Defendants purport to rely on an NYPD Investigation Card stating that Plaintiff was "known to carry bladed weapons," which Plaintiff attached to his opposition papers. (See Defs. Reply at 7 (referencing Investigation Card (Dkt. 16-17)).) This evidence is arguably "integral to the complaint," and therefore appropriate for consideration, insofar as it shows the existence of this written statement. Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). The court need not decide the question of integrality, however, because the Investigation Card does not directly prove or disprove any of the parties' arguments regarding Defendants' Motion. The Investigation Card does not establish that the statement was false, as Plaintiff suggests (see Pl. Opp'n at 5), nor does it resolve the factual dispute over whether the statement was "forwarded" to the prosecutors (Compl. ¶ 23) or was "merely provided internally" (Defs. Reply at 7). The Investigation Card neither corroborates nor disproves Plaintiff's allegation of an additional false statement that Plaintiff was a known gang member. (Compl. ¶ 15.)

The court notes, in passing, that the Investigation Card represents an additional example of apparent inconsistencies in Plaintiff's filings. Plaintiff states that the Investigation Card was filed by Defendant Farley. (Pl. Opp'n at 5; see also Nwokoro Decl. (Dkt. 16-11) ¶ 8.) Defendant Farley's name does not appear on the Investigation Card, however; rather, Defendant Eberhardt is listed as the "reporting officer."

plaintiff were dismissed before trial." (Defs. Reply at 7.) Defendants have misconstrued the standard for fair trial claims based on falsified evidence.

"A plaintiff need not have been tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors." Nnodimele v. Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016) (citing Ricciuti, 124 F.3d at 127, 130). A plaintiff need only show that he suffered a deprivation of liberty "as a result" of the forwarded false information. Garnett, 838 F.3d at 279 (citing Ricciuti, 124 F.3d at 123). The Second Circuit has "consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with criminal charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). The court turns, therefore, to the question of causation—that is, whether Plaintiff's deprivation of liberty came "as a result" of the Officer Defendants' actions.

A Section 1983 claim, "like its state tort analogs, employs the principle of proximate causation." Hoyos v. City of New York, 650 F. App'x 801, 803 (2d Cir. 2016) (summary order) (quoting Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999)). An antecedent offender may escape liability if a superseding act breaks the causal chain. Higazy v. Templeton, 505 F.3d 161, 175 (2d Cir. 2007) (The Second Circuit "adheres to the common law definition of superseding cause." (citing Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999)). Under that theory, courts have declined to impose Section 1983 liability on police officers who impermissibly obtained or distorted inculpatory evidence if the evidence only caused harm due to a superseding act, such as an erroneous or bad-faith decision by a prosecutor or trial court. See Bermudez v. City of New York, 790 F.3d 368, 374 (2d Cir. 2015) (discussing Townes, 176 F.3d 138, and

17

Wray v. City of New York, 490 F.3d 189 (2d Cir. 2007)). The Second Circuit has cautioned, however, that an officer who "misled or pressured" the prosecution or trial judge remains potentially liable. Wray, 490 F.3d at 193; see also Higazy, 505 F.3d at 177.

In this case, Plaintiff alleges that the Officer Defendants "intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements" relating to their investigation and arrest. (Compl. ¶ 26.) Drawing all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has properly pleaded proximate cause by alleging that the Officer Defendants misled the State Prosecutors about the inculpatory evidence tying Plaintiff to the Assault. See Bermudez, 790 F.3d at 375 ("[I]f the ADA was simply not informed of the alleged problems with the evidence, then he could not be a superseding cause of the deprivation of [the plaintiff's] due process rights." (citing Myers v. Cty. of Orange, 157 F.3d 66, 73-74 (2d Cir. 1998)). Although Plaintiff's criminal charges were ultimately dismissed, his arrest and criminal proceedings constitute a cognizable deprivation of liberty under Section 1983.

3. Summary

The court finds that Plaintiff has adequately alleged a prima facie claim of denial of a fair trial as against each of the Officer Defendants. Defendants' Motion is denied as to these claims.

**C. Failure to Intervene (Section 1983)**

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." Porter v. Goord, 467 F. App'x 21, 23 (2d Cir. 2012) (summary order) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)). Defendants argue that Plaintiff "fails to identify which defendants allegedly failed to intervene to prevent the alleged illegal acts." (Defs. Mem. at 16.) Defendants are correct that the section of the Complaint dedicated to this claim contains only generalities and conclusory statements (see Compl. ¶¶ 86-88), which are not entitled to the court's deference,

18

Iqbal, 556 U.S. at 678. Plaintiff's factual recitation, however, specifically alleges that the Officer Defendants participated in—or were at least present for—the violative acts underlying Plaintiff's claims of false arrest and denial of the right to a fair trial. See supra Section I.B.

Defendants point out that any individual Defendant may not be liable under both a theory of direct violation and a theory of failure to intervene. (Defs. Mem. at 16 (citing Jackson v. City of New York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013).) Be that as it may, it would be premature to grant Defendants' Motion at this juncture: on either of Plaintiff's surviving claims, it is conceivable that one of the two Officer Defendants may be found directly liable, while the other may escape direct liability but nonetheless be found liable for failure to intervene. Cf. Jackson, 939 F. Supp. 2d at 231-32 (denying summary judgment on claims of failure to intervene, despite allegations that each defendant directly participated in the violations, "because a genuine issue of material fact exists as to the extent of each defendant police officer's participation in Plaintiff's arrest" (citation omitted)). Defendants' Motion is denied as to these claims.

### D. Municipal Liability (Section 1983)

Plaintiff seeks to hold the City of New York liable for the Officer Defendants' actions, alleging that the City acted with deliberate indifference in failing to adequately supervise NYPD officers or to discipline officers who commit constitutional violations. (Compl. ¶¶ 30-34, 97-110.) The court finds that Plaintiff's allegations are insufficiently specific to support municipal liability under Section 1983.

#### 1. Legal Standard

"A municipality may not be held liable under § 1983 solely on the basis of respondeat superior[;] rather, to establish municipal liability, 'a plaintiff must show that that the violation of his constitutional rights resulted from a municipal custom or policy.'" McGee v. Doe,

568 F. App'x 32, 41 (2d Cir. 2014), as amended (July 2, 2014) (summary order) (quoting

DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998)); see also Monell, 436 U.S. 658.

"[I]solated acts . . . by non-policymaking municipal employees are generally not

sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal

liability." Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (citing Villante v. Dep't.

of Corr., 786 F.2d 516, 519 (2d Cir. 1986)). "[S]uch acts would justify liability," however, if

they "were sufficiently widespread and persistent to support a finding that they constituted a

custom, policy, or usage of which supervisory authorities must have been aware, or if a

municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of

supervisory officials to such abuses." Id. (emphasis added) (citing Amnesty Am. v. Town of W.

Hartford, 361 F.3d 113, 125-26 (2d Cir. 2004)).

2. Analysis

The Complaint's allegations with regard to municipal liability largely consist of

unsupported, conclusory statements that the City knowingly failed to supervise and discipline

NYPD officers. (See Compl. ¶¶ 30-39, 97-110.) Plaintiff alleges, for example, that the City's

Civilian Complaint Review Board "virtually never initiates their own findings of false statements

against officers" who have falsely testified, and that the NYPD has "no procedure to notify

individual officers or their supervisors of unfavorable judicial review of their conduct." (Compl.

¶¶ 100, 102.) A Plaintiff may not insulate a claim against dismissal, however, by "tender[ing]

'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also e.g., Walker v. City of New York,

No. 14-CV-808 (ER), 2015 WL 4254026, at *7 (S.D.N.Y. July 14, 2015) (rejecting similar

conclusory allegations regarding the NYPD and collecting cases). Absent specific alleged

examples or supporting evidence, such allegations will not sustain a Monell claim.

20

The court turns to three allegations that have greater specificity. First, Plaintiff quotes at length from a 2009 opinion from this court that noted "anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department." (Compl. ¶¶ 37, 105 (quoting Colon v. City of New York, No. 09-CV-8 (JBW), 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009)).) Plaintiff is not the first to premise a claim of municipal liability on Colon, however. Five years ago, the Second Circuit affirmed dismissal of a similar claim, noting that the plaintiff's "citation of an unrelated action, in which another district court addressed the sufficiency . . . of a separate complaint premised on a different set of factual allegations, does not support an inference" regarding the current plaintiff's alleged constitutional violations, especially since "[n]either the judge nor a jury [in Colon] found as a fact that the City employed harmful practices or policies." Simms v. City of New York, 480 F. App'x 627, 630 (2d Cir. 2012) (summary order). The Simms summary order is not binding authority, but the court finds its reasoning persuasive. See Iqbal, 556 U.S. at 679 (The complaint must plead sufficient "factual content [to] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). Plaintiff has failed to explain why Colon is any more relevant here than it was in Simms.

The court likewise finds insufficient Plaintiff's assertion that "[t]he existence of . . . unconstitutional customs and policies may [ ] be inferred" from an NYPD deputy commissioner's 2006 statement that "commanders are permitted to set 'productivity goals.'" (Compl. ¶ 104.) The Simms court disregarded a similar allegation where, as here, the plaintiff "ma[de] no effort to delineate the connection" between the existence of officer productivity goals and the plaintiff's alleged constitutional violations. Simms, 480 F. App'x at 630.

Finally, Plaintiff refers to a 2000 report from the New York City Bar Association, which found that "civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers." (Compl. ¶ 103.) Research reports may be used to bolster Monell claims, but only if those reports are sufficiently connected to the specific facts of the case. In this instance, Plaintiff cites a report that was published 13 years prior to the conduct at issue, and fails to explain whether the misconduct analyzed in the report bears any resemblance to the violations allegedly committed by the Officer Defendants. Compare, e.g., Marlin v. City of New York, No. 15-CV-2235 (CM), 2016 WL 4939371, at *20 (S.D.N.Y. Sept. 7, 2016) ("Plaintiff was allegedly subject to the police's use of excessive force in March 2012, which falls within the five year period [analyzed in the cited report] in which there were 207 allegations of force in 179 cases that were substantiated by the [Civilian Complaint Review Board].") with Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (faulting the plaintiff for failing to allege a "causal link between the allegedly 'unstructured' discipline guidelines [described in a research report] and the unconstitutional practice of not investigating allegations of use of excessive force").

The court finds that Plaintiff has failed to support his Monell claim with sufficiently specific allegations regarding the time period and the types of misconduct at issue in the Complaint. Defendants' Motion is granted as to Plaintiff's claim of municipal liability.

## IV.    CONCERNS REGARDING FACTUAL ALLEGATIONS AND SUBMISSIONS

This opinion has identified numerous issues regarding the factual allegations and evidentiary submissions in this case. The individual issues are generally not egregious in isolation, but in the aggregate, they raise serious concerns. At best, they added significant complexity to the briefing and adjudication of Defendants' Motion, thereby placing unnecessary

burdens on the parties and the court. At worst, they suggest possible violations of procedural rules and professional ethics.

The court is concerned, for example, that the Complaint may have failed to mention material facts that were known to Plaintiff at the time of filing; that Plaintiff declined the opportunity to amend the Complaint but later—after Defendants had briefed their Motion— conceded the non-viability of certain claims and attempted to introduce new evidence; that Plaintiff claimed to be exonerated by the Security Footage while conspicuously omitting portions of the footage that appear to be inculpatory; that Plaintiff's filings are inconsistent in alleging which of the Officer Defendants committed which acts; and that both parties submitted numerous evidentiary exhibits with regard to a motion that, by its very name, is meant to be adjudicated on the pleadings.

The court has determined that Defendants' Motion must be assessed based on allegations that appear on the face of the Complaint, and that under that standard, certain among Plaintiff's claims are adequately pleaded. As the case proceeds, the court cautions both parties to be mindful of their ethical obligations. See Fed. R. Civ. P. 11(b) (representations to the court); N.Y. Rules Prof'l Conduct r. 3.1 (non-meritorious claims and contentions), 3.3 (conduct before a tribunal). Should the court identify additional issues—especially if it appears that errors were made recklessly or in bad faith—the court will consider imposing sanctions.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Dkt. 19) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to all claims against the John Doe Defendants; all claims of malicious prosecution; all claims of unlawful search; and all claims of municipal liability under Section 1983 against the City of New York or the Officer Defendants in their official capacities. These claims are

23

DISMISSED WITH PREJUDICE. Defendants' Motion is DENIED with respect to Plaintiff's claims of false arrest, denial of the right to a fair trial, and failure to intervene as against the Officer Defendants in their individual capacities; and Plaintiff's claim of derivative liability against the City under the New York State Constitution.

The parties are DIRECTED to proceed with any outstanding discovery under the supervision of Magistrate Judge Lois Bloom. The court GRANTS leave for both parties to move for summary judgment upon completion of discovery. Should either party wish to so move, the parties shall jointly submit a proposed briefing schedule to the court.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 15, 2017

NICHOLAS G. GARAUFIS
United States District Judge